[Cite as *State v. Sammons*, 2011-Ohio-4296.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :          C.A. CASE NO.     24064

v.                               :          T.C. NO.     09CR3758

DAVID E. SAMMONS                 :          (Criminal appeal from
                                           Common Pleas Court)

    Defendant-Appellant         :


                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___26th___ day of ___August___, 2011.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JAMES C. STATON, Atty. Reg. No. 0068686, 5613 Brandt Pike, Huber Heights, Ohio 45424
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Defendant-Appellant David Sammons appeals from his conviction for felonious assault. For the following reasons, we affirm the judgment of the trial court.

I

{¶ 2} On the evening of November 9, 2009, Sammons, his girlfriend Kimberly Miller, Robert Maxie, and several other people were celebrating a birthday. Miller and Maxie testified that they were talking and joking around when, suddenly, Sammons attacked Maxie. As the two men wrestled on the ground, Maxie hit Sammons with a beer bottle. Sammons stabbed Maxie repeatedly with a knife, causing injuries to Maxie's jaw, throat, and hand. Maxie was hospitalized for five days as a result of his injuries.

{¶ 3} Someone called the police and reported a stabbing; officers arrived within minutes of the altercation. The officers found an agitated Maxie, who was covered in blood, holding his bleeding neck and claiming that Sammons had stabbed him. Sammons, who had blood on his hands and in his hair, told the officers that he had not been in a fight and that nothing was going on. The only injury that the officers saw on Sammons was a cut on his hand. The other people on the scene claimed not to have seen the fight.

{¶ 4} Sammons called Eddie Jones and Brittany Casey to testify in his defense. Jones did not know who started the fight, but he saw Sammons and Maxie rolling around on the ground fighting, with Maxie hitting Sammons in the head with a brick. When Jones heard the police coming, he left the scene without talking to them. Casey did not know what started the fight, but she saw Maxie come after Sammons, swinging at his head with something that looked like a brick. Casey admitted that she told one of the officers at the scene that she had heard some arguing, but she had not seen any fighting.

{¶ 5} Sammons testified that prior to the fight, Miller tried to draw Maxie into a verbal argument. When Maxie became angry and balled his fist up, Miller ran to Sammons for protection. Sammons cussed at Maxie, who attacked Sammons, cutting his hand.

Maxie knocked Sammons down and began hitting him with what Sammons believed to be a brick. Sammons claimed that he was in fear for his life. Sammons pulled out his knife; Maxie grabbed his wrist, and repeatedly shook Sammons's hand, causing him to cut Maxie. When the officers arrived, Sammons claims that he told them that he had nothing to say because he wanted a lawyer.

{¶ 6} Sammons was indicted on two counts of felonious assault (deadly weapon and serious physical harm). A jury found Sammons guilty of both charges. The trial court having found that the counts would merge, the State elected to proceed on the serious physical harm conviction, and the trial court sentenced Sammons to seven years in prison. Sammons appeals.

II

{¶ 7} Sammons's First Assignment of Error:

{¶ 8} "THE COURT VIOLATED APPELLANT'S FIFTH AMENDMENT RIGHT NOT TO TESTIFY BY PRESSURING APPELLANT TO TESTIFY."

{¶ 9} In his first assignment of error, Sammons maintains that his decision to testify was not knowingly and voluntarily made because the trial court coerced him into testifying by telling him that some jurors might hold it against him if he did not. Under the Fifth Amendment to the United States Constitution, no person may be compelled to testify against himself. However, a defendant may voluntarily choose to waive his right not to testify. (Citations omitted.) *State v. Jenkins* (1984), 15 Ohio St.3d 164, 228-29.

{¶ 10} The concern that some jurors may infer guilt from a defendant's choice not to testify, and the resultant decision of the defendant to testify in order to avoid that inference,

does not amount to coercion for the purpose of determining whether a defendant's waiver of the Fifth Amendment privilege is knowing and voluntary. *State v. Roberts* (May 10, 1979), Cuyahoga App. No. 37848. Moreover, the record does not support Sammons's claim that the trial court coerced him to testify.

{¶ 11} After sending the jurors from the courtroom, the trial court explained to Sammons as follows:

{¶ 12} "Mr. Sammons, I just want to tell you, you do have a Fifth Amendment right where you absolutely do not have to testify on your own behalf in this case. And there are, of course, pros and cons to taking the stand, which I am sure your attorney has reviewed with you.

{¶ 13} "If you take the stand to testify, by waiving your Fifth Amendment rights, you can decide to do that of your own free will. Again, you're under no compunction, nobody can force you to do that. You have an absolute right not to testify.

{¶ 14} "If you do testify, then you will be subject to cross examination where you're under oath to tell the truth. Also, I don't know if you have any past criminal convictions, but if you do, then it is extremely certain that the prosecution will bring out the fact that you have those past criminal convictions. And so, I just want you to be aware that you do have that Fifth Amendment right.

{¶ 15} "And again, there are pros and cons associated with invoking that Fifth Amendment right. To be honest with you, it is my perspective that there will be jurors [who] will have that point of view that said: Well, if you're innocent, you have to get up there and tell us that you're innocent. And they don't necessarily buy into the Fifth

Amendment in the way that you and I and your attorney do.

{¶ 16} "However, I've got to tell you, when the jury gets instructed, one of the instructions that they will receive if you do stick by that Fifth Amendment right to not testify, is they are not allowed to use your right that you've not testified against you for any purpose whatsoever in the determination of your guilt or innocence.

{¶ 17} "So, I just wanted to go over that with you. And with that, I'll go take my break and we'll come back."

{¶ 18} The court then recessed for more than ten minutes before asking Sammons, outside of the presence of the jury, whether he was going to waive his Fifth Amendment right. Sammons stated, "that's the only way I can get my point across." The court reminded him:

{¶ 19} "[W]hen I was talking to you earlier, you know, and I mentioned to you that some jurors might have that perspective that maybe if you don't take the stand, that they don't give you the complete benefit of the doubt.

{¶ 20} "I want to make sure that you understand that if somebody holds that belief, they're holding that belief contrary to what I'm going to be telling them to do. * * *"

{¶ 21} After giving this explanation, Sammons indicated his decision to testify in the following:

{¶ 22} "The Court: And you understand that I'm not giving you advice one way or the other as to whether or not to take the stand or not take the stand. I just wanted to make sure that you were fully aware that you had that Fifth Amendment right.

{¶ 23} "The Defendant: Right.

{¶ 24} "The Court: And so it's your decision to take the stand, being one that you're making, again of your own free will, after talking about the benefits and the disadvantages of taking the stand with your legal counsel?

{¶ 25} "The Defendant: Yes."

{¶ 26} The record demonstrates that the trial court did not pressure or coerce Sammons into testifying. Instead, the above-quoted passages show that the trial court was making every effort to ensure that Sammons understood that while there were benefits and disadvantages to any decision regarding whether or not to testify, the ultimate decision was Sammons's.

{¶ 27} After discussing whether or not to testify with his attorney, it was Sammons's opinion that his testimony was the only way to present his side of the story to the jury, namely that he acted in self-defense when he injured Maxie. "[B]ecause the burden of proving a claim of self-defense is on the defendant, it may be necessary for a defendant to testify in order to establish that defense." (Citations omitted.) *State v. Miller,* Montgomery App. No. 22433, 2009-Ohio-4607, ¶39. Thus, Sammons's decision to testify was a legitimate and reasonable defense decision.

{¶ 28} Sammons's decision to testify having been knowingly and voluntarily made, and not the result of coercion by the trial court, his first assignment of error is overruled.

III

{¶ 29} Sammons's Second Assignment of Error:

{¶ 30} "THE STATE PREJUDICED APPELLANT WHEN HE TOLD THE JURY THAT THEY SHOULD DECIDE THE APPELLANT'S GUILT WITHOUT REGARD TO

ANY INSTRUCTIONS BY THE COURT AND WHEN HE CALLED APPELLANT A LIAR."

{¶ 31} Soon after his conviction, Sammons filed a motion for a new trial, arguing jury misconduct. The trial court overruled that motion. On appeal, Sammons argues in his second assignment of error that he should have been granted a new trial because the prosecutor committed two instances of prosecutorial misconduct.

{¶ 32} There was no objection to either alleged instance of prosecutorial misconduct, and therefore, Sammons has waived all but plain error. *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, ¶175. The plain error rule is to be invoked only under exceptional circumstances in order to avoid a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 95. Plain error does not occur unless, but for the error, the outcome of the trial clearly would have been different. Id. at 97; Crim.R. 52(B).

{¶ 33} In reviewing claims of prosecutorial misconduct, the test is whether the remarks were improper and, if so, whether those comments prejudicially affected the substantial rights of the defendant. *State v. Jones,* 90 Ohio St.3d 403, 420, 2000-Ohio-187. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct.940, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See *State v. Loza* (1994), 71 Ohio St.3d 61, 78, overruled on other grounds. We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson,* Greene App. No. 2007-CA-51,

2008-Ohio-2900, ¶42, citing *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.

{¶ 34} First, Sammons complains about the following statements: "Ladies and gentlemen of the jury, we talked about waiting until the end to make a decision. Well, actually that end was yesterday. And based on all the evidence yesterday, you could have decided this case. And that case would have been guilty as charged." Sammons insists that, in effect, the prosecutor was telling the jurors that they could decide the case without having been instructed by the court. Instead, the statement may have been intended as a means of emphasizing the shift away from the evidentiary phase of the trial, which had been completed the previous day. While inartfully worded, it is doubtful that the prosecutor's statements were intended to encourage the jurors to ignore the instructions that the judge would later give them. This is particularly true when, as here, the prosecutor proceeded to explain at length how the State's evidence had proven each element of the crimes with which Sammons had been charged.

{¶ 35} Both prosecutors and defense attorneys are given wide latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Black,* 181 Ohio App.3d 821, 2009-Ohio-1629, ¶33, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 165. There is little likelihood that the outcome of the trial would have been different absent the prosecutor's injudicious statements, particularly when those statements are considered in the context of the prosecutor's entire closing argument, which they must be. *State v. Stevens* (1970), 24 Ohio St.2d 76, 82. No plain error occurred during closing argument that undermines confidence

in the jury's verdict.

{¶ 36} Second, Sammons argues that the prosecutor committed misconduct by implying that Sammons had lied to the jury. During the State's cross-examination of Sammons, after first eliciting testimony that Sammons had three prior felony convictions for assault, the prosecutor asked, "[a]nd you want this jury to believe that what you just spun from that witness stand is the truth, the whole truth, and nothing but the truth?" The credibility of all witnesses is relevant, as the jurors's decision ultimately comes down to whose testimony they believe. In this case, Sammons had presented a very different version of events than had the State's witnesses, and it is to be expected that the State would challenge his truthfulness. See, e.g., *State v. Lillicrap,* Montgomery App. No. 23958, 2011-Ohio-3505, ¶9.

{¶ 37} Nevertheless, we conclude that the form of the State's question was improper because the question could not be answered without the potential for misinterpretation by the jury. For example, if Sammons answered yes, it could be seen as admitting that he had lied and that he expected the jury to believe his lies. On the other hand, if he answered no, he could be denying that he lied, but he might also be acknowledging that he did not expect the jurors to believe him. Sammons could be condemned in the eyes of the jurors, no matter how he answered the question. In this regard, the question is a classic example of the "when did you stop beating your wife" variety. See, e.g., *City of Berea v. Fenster* (Sept. 17, 1998), Cuyahoga App. No. 73252.

{¶ 38} Although the form of the question was improper, we do not conclude that the question denied Sammons his right to a fair trial. *State v. Phillips* (1995), 74 Ohio St.3d 72.

Nor do we find that the question rose to the level of plain error, as the absence of that question would not have caused a different outcome in the jury's verdict.

{¶ 39} Sammons's second assignment of error is overruled.

IV

{¶ 40} Sammons's Third Assignment of Error:

{¶ 41} "THE COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS TO SPECULATIVE AND HEARSAY TESTIMONY AND ALLOWING PRE-MIRANDA SILENCE TO BE USED AGAINST APPELLANT."

{¶ 42} In his third assignment of error, Sammons contends that the trial court abused its discretion in regard to the admission of three pieces of evidence. The admission of evidence is a matter left to the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of that discretion, a trial court's ruling will not be reversed. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 43} First, Sammons claims that the trial court should have sustained his objection to the State's question to Detective Murphy regarding the origin of the blood found at the scene of the fight. The objection having been overruled, the detective opined that the blood came from Maxie. This did not amount to impermissible speculation, as Maxie had sustained serious injuries, and the officers found him covered in blood and still bleeding. Nor was the information offered for the truth of the matter, but was instead offered to explain why no DNA testing was done in this case. Therefore, it was not an abuse of

discretion for the court to allow this testimony.

{¶ 44} Second, Sammons insists that the trial court erred in overruling his hearsay objection to paramedic Kevin Shea's testimony regarding Maxie's statement that he had been repeatedly stabbed. However, the statement was admissible both as an excited utterance and as a statement made in seeking medical treatment.

{¶ 45} Prior to eliciting the testimony, the State asked Shea about the state in which he had found Maxie, just minutes after the fight. Shea explained that Maxie was upset and agitated, and he was still actively bleeding from his injuries. "Evid.R. 803(2) allows a hearsay statement to be admitted into evidence if it 'relates to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" See, e.g., *State v. Fry* (2010), 125 Ohio St.3d 163, ¶100, quoting Evid.R. 803(2). See, also, *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, ¶94-99. Maxie's statement about being stabbed and hit with a rock, having been made while he was still under the stress of the assault, was admissible as an excited utterance.

{¶ 46} Additionally, the statement was admissible as a statement made for medical diagnosis or treatment because the paramedic needed to know what had happened to Maxie in order to know how best to treat his injuries. Statements made to medical personnel for purposes of diagnosis or treatment fall into a well-defined exception to the hearsay rule set out in Evid.R. 803(4). *State v. Matthews,* 189 Ohio App.3d 446, 2010-Ohio-4153, ¶28, citing *State v. Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, ¶63; *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, ¶25. The statement related to the injuries and did not indicate who had inflicted them.

{¶ 47} Finally, Sammons argues that the trial court erred in allowing the State to use his pre-arrest silence against him. Sammons initially objected to a question on cross-examination about why he did not tell the police that Maxie was beating him to death with a brick, but he withdrew his objection after a sidebar conference, thereby waiving all but plain error. *Long*, 53 Ohio St.2d 91; Crim.R. 52(B). In any event, although the State's use of pre-arrest silence has been found to be error, no such error occurred in this case because Sammons did not, in fact, remain silent. *State v. Leach,* 102 Ohio St.3d 135, 2004-Ohio-2147, ¶38.

{¶ 48} In this case, unlike the defendant in *Leach,* Sammons was not yet a suspect when the officers approached him. Instead, the officers were separately talking to everyone to try to find out what had happened. All the officers knew when they arrived on the scene was that there had been a stabbing. When they found Sammons with blood on his hands and in his hair, for all the officers knew, he could have been a victim.

{¶ 49} Furthermore, according to the police, when they asked Sammons what had occurred, he denied having been in a scuffle and claimed that nothing was going on. As opposed to the *Leach* case, it was Sammons who brought up that he allegedly said, "I'm not saying nothing. I need a lawyer." That was never mentioned by the prosecutor. Because Sammons did not exercise his right to be silent or ask for an attorney when the officers arrived, the trial court did not err in allowing the State to ask him why he did not claim that he had acted in self-defense when the officers arrived on the scene on the evening of the altercation.

{¶ 50} Sammons's third assignment of error is overruled.

V

{¶ 51} Having overruled all three of Sammons's assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . .

HALL, J. and CELEBREZZE, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

R. Lynn Nothstine
James C. Staton
Hon. Mary L. Wiseman