[Cite as *State v. Hawkins-McKinney*, 2011-Ohio-4667.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee            :            C.A. CASE NO.    24384

v.                                        :            T.C. NO.    10CRB2965

MONIQUE HAWKINS-MCKINNEY       :              (Criminal appeal from
                                                        Municipal Court)
    Defendant-Appellant           :

                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____16th_____ day of _____September_____, 2011.

. . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

LAUREN L. CLOUSE, Atty. Reg. No. 0084083, 20 S. Main Street, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Monique Hawkins-McKinney was found guilty by a jury of resisting arrest. She was sentenced to ninety days in jail, but that sentence was suspended; she was also sentenced to two years of community control and to thirty hours of community service, and she was fined of $500.   She appeals from her conviction.

**{¶ 2}** On March 15, 2010, Dayton police officers followed Hawkins-McKinney's son to her home after seeing him abandon a stolen car. Hawkins-McKinney was inside the home when the officers arrived.

**{¶ 3}** At trial, the State presented testimony from three police officers who were present at the encounter with Hawkins-McKinney. Detective Michael August testified that his investigation of a theft of a yellow Ford Mustang earlier in the day pointed to Hawkins-McKinney's son, K.B. As part of the investigation, Detective August and another officer went to look for the stolen vehicle in the vicinity of Hawkins-McKinney's home. Officer Christopher Smith saw K.B. "bail out" of the yellow Mustang and run into Hawkins-McKinney's kitchen. Officer Smith approached and entered the house, told K.B. he was under arrest, and ordered him to "get down on the ground." K.B. "began backing up away from" Officer Smith, who had drawn his gun, and Smith feared that K.B. was trying to get to a weapon.

**{¶ 4}** According to Officer Smith, as K.B. backed from the kitchen into the living room of the house, Hawkins-McKinney appeared and stood between Smith and K.B. "She was acting as a shield," yelling, and blocking Smith's view of K.B while demanding to know what the officers were doing there. She also instructed K.B. not to tell the officers anything. Smith told Hawkins-McKinney to move aside. He testified that he was "getting really scared" because he could not see what K.B. was doing. Officer Smith pushed Hawkins-McKinney aside with one hand, and K.B. finally got on the floor as ordered, but K.B. placed his hands under his body, so the officers were struggling to handcuff him. At this point, Smith stated that Hawkins-McKinney "comes up to me again and she's trying to

get in front of me while I'm bent over trying to grab" K.B. Smith "shove[d] her away again" before successfully handcuffing K.B.

{¶ 5} Officer Amy Simpson, who also responded to the house, arrived after K.B. had been handcuffed but while he was still on the floor. Simpson testified that Hawkins-McKinney was "extremely close" to and within "inches" of Officer Smith, "screaming at the top of her lungs." Simpson said that she "couldn't even understand what [Hawkins-McKinney] was saying because she was screaming so loudly." Simpson recounted that Hawkins-McKinney was "trying to get in between" Officer Smith and K.B., and that Hawkins-McKinney was given "at least three verbal commands" by Smith to step back and to lower her voice, but she refused to comply. According to Simpson, Hawkins-McKinney was "absolutely" impairing Smith from arresting K.B.

{¶ 6} After K.B. was handcuffed, Officer Smith informed Hawkins-McKinney that she was under arrest for obstructing official business (K.B.'s arrest). Officers Smith and Simpson testified that, when they attempted to handcuff Hawkins-McKinney, she pulled her arms forward, fell to the ground, closed her eyes, and went limp. Although the officers were initially concerned that she might be having a medical problem, they determined that she was not and handcuffed her.

{¶ 7} Hawkins-McKinney also testified at trial about the events of March 15, 2010. According to Hawkins-McKinney, she was lying in bed upstairs when she heard loud noises coming from the lower level of the house. She ran down the steps and saw K.B. with his hands up, backing from the kitchen into the living room of the house. She heard K.B. say "I didn't do nothing." Hawkins-McKinney stated that the kitchen was dark, but she saw

"a flashlight and *** a police officer and [her] immediate response was, 'Why are you ***

creeping through my backdoor?'" Hawkins-McKinney recounted that the officer told K.B.

to get down, and she testified that she also told him to get down. She testified that, when

K.B. was on the ground, his hands were "flat on the ground," not under this body.

According to Hawkins-McKinney, she moved away from the officers, repeatedly asked what

was going on, and told K.B. to be quiet when he got loud; the officers were unresponsive to

her questions about what was going on, even though she informed them that K.B. was a

juvenile and she was his mother. She stated that she never stepped between K.B. and

Officer Smith, tried to interfere with K.B.'s arrest, or tried to protect him. She also stated

that, while she may have talked in an excited manner, she had not yelled, screamed, used

profanity, or tried to prevent the officers from executing their duties.

{¶ 8} Hawkins-McKinney further testified that, while Officer Smith was

handcuffing K.B., another officer pulled her hands behind her back, "put his forearm on

[her] neck and started choking [her]." These actions resulted in Hawkins-McKinney's

falling to her knees and going limp.

{¶ 9} Hawkins-McKinney was cited for obstructing official business (K.B.'s arrest)

and resisting K.B.'s arrest. She was tried by a jury in the Dayton Municipal Court. The

jury found Hawkins-McKinney guilty of resisting arrest, but not guilty of obstructing official

business. She was sentenced as described above.

{¶ 10} Hawkins-McKinney appeals from her conviction, raising two assignments of

error. Her first assignment of error states:

{¶ 11} "THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS

INSTRUCTIONS TO THE JURY FOR THE OFFENSE OF RESISTING ARREST."

{¶ 12} Hawkins-McKinney claims that the trial court's jury instruction on resisting arrest was prejudicial to her. Although she acknowledges that she did not object to the instruction, she states that "plain error exists" because the jury was "mislead [sic] in a manner materially affecting" her rights.

{¶ 13} Plain error does not occur unless, but for the error, the outcome of the trial clearly would have been different. *State v. Sammons*, Mongomery App. No. 24064, 2011-Ohio-4296, ¶32, citing *State v. Long* (1978), 53 Ohio St.2d 91, 97; Crim.R. 52(B). The content of the jury charge is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Guster* (1981), 66 Ohio St.2d 266, 271, citing *State v. Loudermill* (1965), 2 Ohio St.2d 79.

{¶ 14} The trial court defined resisting arrest as follows: "Before you can find the Defendant guilty [of resisting arrest], you must find beyond a reasonable doubt that: (1.) on or about the fifteenth day of March, 2010, (2.) in the City of Dayton, Montgomery County, Ohio, (3.) the Defendant, (4.) recklessly, (5.) or by force, (6.) resisted or interfered, (7.) with the lawful arrest of another, to wit: [K.B.]." The court then defined the terms "recklessly," "force," "resist or interfere," "arrest," and "lawful arrest."

{¶ 15} Hawkins-McKinney objects for the first time on appeal to the court's definition of "resist or interfere." The court stated: "Resist or interfere means to oppose, obstruct, hinder, impede, interrupt or prevent an arrest by a law enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct." Specifically, Hawkins-McKinney contends that the trial court "clearly caused

confusion with the jury" by "interjecting the words 'such as going limp' into the jury instructions," because "in reality her going limp had nothing to do with resisting the arrest of her son."

{¶ 16} R.C. 2921.33(A), under which Hawkins-McKinney was charged, defines resisting arrest as follows: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." The statute does not define "resist" or "interfere." However, the Legislative Service Commission Comment accompanying the statute reads: "This section covers resistance or interference with an arrest not only by the person being arrested but by another as well. The offense may be committed through the use of force, or recklessly by any means, *such as 'going limp.'*" (Emphasis added.) And the Ohio Jury Instructions provide the following definition: "'Resist or interfere' means to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law enforcement officer by the use of force or recklessly by any means, *such as going limp*, or any other passive or indirect conduct." (Emphasis added.) 2 Ohio Jury Instructions, Section 521.33(4). Although the police officers testified that Hawkins-McKinney went limp when they tried to arrest her, there is nothing in the record to suggest that the trial court's definition was intended to draw a comparison to Hawkins-McKinney's conduct in this case. We presume that the trial court was simply using the Ohio Jury Instruction definition of "resist or interfere."

{¶ 17} Hawkins-McKinney also claims that the trial court's instruction about "going limp" confused the jury as to whose arrest was the subject of the charge of resisting arrest. There was, indeed, some confusion about whose arrest she was alleged to have resisted, but the confusion did not arise from the trial court's definition of "resist or

interfere." At the beginning of its instruction on resisting arrest, the trial court expressly stated that the offense related to the "lawful arrest of another, to wit: [K.B.]." However, when the court instructed the jury as to the lawfulness of the arrest with which Hawkins-McKinney was alleged to have interfered, the court referred to whether "a reasonable police officer under the facts and circumstances in evidence would have believed that Defendant was committing or had committed the offense of obstructing official business." This portion of the definition might have suggested that Hawkins-McKinney was charged with resisting her own arrest.

{¶ 18} The prosecutor brought this "confusing" instruction to the court's attention and, before the jury instructions were concluded, the court clarified the instructions, stating: "*** [A]n arrest is lawful if the offense in which the arrest was being made was one for which the Defendant could be arrested and the arresting officer had authority to make the arrest at the time and place where the alleged resistance for interference took place and a reasonable police officer under the facts and circumstances in evidence would have believed that [K.B.] was committing or had committed the offense of grand theft auto. *** The Defendant in that instruction is [K.B.] that I had earlier indicated that the Defendant Michele [sic] Hawkins-McKinney was referred to and it is kind of confusing. So, I want to clarify that."

{¶ 19} We also note that the State's opening statement and both parties' closing arguments made clear that Hawkins-McKinney was charged with resisting K.B.'s arrest, not her own arrest.

{¶ 20} In light of the trial court's clarification that the arrest alleged to have been

resisted was K.B.'s arrest for grand theft of a motor vehicle and the parties' statements to this effect in opening statements and closing arguments, we cannot conclude that the outcome of the case clearly would have been different but for the court's misstatement suggesting that Hawkins-McKinney had resisted her own arrest. This fact was sufficiently clear to the jury.

{¶ 21} Having concluded that Hawkins-McKinney was not prejudiced by the trial court's misstatement of the offense she was alleged to have resisted or by the phrase "such as going limp" in the court definition of "resist or interfere," we find no plain error in the jury instructions.

{¶ 22} The first assignment of error is overruled.

{¶ 23} Hawkins-McKinney's second assignment of error states:

{¶ 24} "THE CONVICTION OF DEFENDANT/APPELLANT FOR THE OFFENSE OF RESISTING ARREST WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 25} Hawkins-McKinney contends that her conviction was against the manifest weight of the evidence. She relies on her acquittal on the charge of obstructing official business and contends that the jury could not have concluded, based on the evidence presented, that she had resisted her son's arrest but had not obstructed official business.

{¶ 26} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson,* Montgomery App. No. 22581, 2009-Ohio-525, at ¶12. When evaluating whether a conviction is contrary to the manifest weight of the

evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 27} The offense of obstructing official business requires that the offender have a <u>purpose</u> to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity. R.C. 2921.31(A). Because Hawkins-McKinney did not act by force in this case, the charge of resisting arrest required the State to prove that Hawkins-McKinney acted <u>recklessly</u>. The mens rea for the two offenses is different and, as such, the jury could have reasonably convicted Hawkins-McKinney of one and not the other.

{¶ 28} For example, based on the evidence presented, including Hawkins-McKinney's claim that Officer Smith was "creeping" into her house with a flashlight, the jury could have concluded that the State had failed to prove, beyond a reasonable doubt, that Hawkins-McKinney was aware that Officer Smith was attempting to perform an official duty – the arrest of K.B. – when she interfered. If so, the jury could have found that Hawkins-McKinney did not have the requisite purpose to be found guilty of the offense of obstructing official business. Such a conclusion is not inconsistent with the jury's conclusion that Hawkins-McKinney resisted a lawful arrest by recklessly interfering with it. See *Fairborn v. Blanton* (June 28, 1995), Greene App. No. 94-CA-103. Moreover, even if the verdicts on the two charges were inconsistent, such an inconsistency would not

require us to overturn the verdict. See *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 446 ("an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.")

{¶ 29} Hawkins-McKinney's conviction for resisting arrest was not against the manifest weight of the evidence.

{¶ 30} The second assignment of error is overruled.

{¶ 31} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Amy B. Musto
Lauren L. Clouse
Hon. John S. Pickrel