[Cite as *State v. Warren*, 2025-Ohio-1814.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30258 |
| | : | |
| v. | : | Trial Court Case No. 23CRB3882 |
| | : | |
| UNIQUA N. WARREN | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 21, 2025

. . . . . . . . . . .

ARVIN S. MILLER, Attorney for Appellant

MARC T. ROSS, Attorney for Appellee

. . . . . . . . . . . .

HANSEMAN, J.

{¶ 1} Appellant Uniqua N. Warren appeals from her convictions for obstructing official business and resisting arrest following a bench trial in the Dayton Municipal Court. In support of her appeal, Warren claims that her convictions were not supported by

sufficient evidence and were against the manifest weight of the evidence. For the reasons outlined below, we disagree with Warren's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On October 25, 2023, Warren was charged by complaint with one second-degree-misdemeanor count of obstructing official business in violation of R.C. 2921.31(A) and one second-degree-misdemeanor count of resisting arrest in violation of R.C. 2921.33(A). Warren pled not guilty to both charges and the matter proceeded to a bench trial on March 18, 2024.

{¶ 3} During Warren's trial, the State called Dayton police officer Zachary Newsome to testify as a witness. Ofc. Newsome testified that during the early morning hours of October 25, 2023, he and his partner, Ofc. Poteet, were on duty in a marked police cruiser patrolling the west side of Dayton when they observed a white Jeep Patriot ("the vehicle") traveling at a high rate of speed on Siebenthaler Avenue. The officers did not clock the vehicle's speed with a radar gun, but Ofc. Newsome recalled having to drive 70 mph to catch up with it. Ofc. Newsome also recalled that the posted speed limit in the area was less than 70 mph.

{¶ 4} As Ofc. Newsome was catching up with the speeding vehicle, he observed the vehicle run a red light at the intersection of Siebenthaler Avenue and Philadelphia Drive. Shortly thereafter, Ofc. Newsome saw the vehicle pull into a Marathon gas station. Ofc. Newsome testified that he followed the vehicle to the gas station and activated the

overhead lights on his police cruiser to effectuate a traffic stop for the speeding and red-light violations.

{¶ 5} Continuing, Ofc. Newsom testified that he had pulled up to the vehicle in his police cruiser and told the driver, later identified as Warren, to exit her vehicle. In response, Warren exited the vehicle and then walked away. Ofc. Newsome testified that he yelled for Warren to stop, but Warren ignored his order and walked to a third-party vehicle that was parked at the gas station. When Ofc. Newsome said: "[H]ey stop, hey stop, what are you doing[?]" Warren responded: "I'm getting my cell phone." Trial Tr., p. 68. Ofc. Newsome thereafter walked over to Warren and the vehicle that Warren had approached.

{¶ 6} During his testimony, Ofc. Newsome explained that he had been equipped with a body camera that recorded his interactions with Warren on the morning in question. The video footage captured by Ofc. Newsome's body camera was played for the trial court and admitted into evidence as State's Exhibit 1. The video footage established that the body camera began recording from the time that Ofc. Newsome approached Warren at the third-party vehicle.

{¶ 7} At the beginning of the video, Warren was speaking with Ofc. Newsome while standing beside the front, passenger-side door of the third-party vehicle. Ofc. Poteet then approached Warren while Warren told Ofc. Newsome: "You did not see me driving." Ofc. Newsome responded: "You literally just got out of the car." Warren then repeated herself, saying: "You didn't see me driving." Ofc. Newsome responded, "yeah, I did," and Warren again said: "You didn't."

{¶ 8} While Ofc. Newsome and Warren were speaking, the driver of the third-party vehicle could be seen holding a cellphone out of the passenger-side window. The driver eventually said: "Hey, hey, hey, officer, officer, here her phone (sic) I'm about to go[.]" Warren then opened the passenger-side door of the third-party vehicle as if she were going to get inside. Ofc. Newsome, however, shut the door before Warren could enter the vehicle. As that was happening, Ofc. Poteet took the cellphone from the driver's hand. The driver of the third-party vehicle thereafter indicated that he was leaving and told the officers to: "Have a good night." Ofc. Newsome responded, "alright you too, see you later," and that vehicle drove away.

{¶ 9} As the third-party vehicle drove away, Ofc. Newsome asked Warren: "You got a driver's license on you? Or do you want to go in the back of the car?" Warren responded: "No. I'm not going no fucking where." In response to that comment, Ofc. Newsome said, "yeah you are" and immediately grabbed Warren's left wrist and tried to place her hand behind her back. Warren, however, resisted Ofc. Newsome's attempt to place her hand behind her back and yelled: "Don't. Don't. Why you putting your hands on me?" In response, Ofc. Newsome said: "Don't pull away from me." Warren continued to resist and said: "Did I do something illegal?" In response, Ofc. Newsome told Warren to put her hands behind her back multiple times, and Warren continued to resist and yell that she was not driving. The video showed that Ofc. Newsome and Ofc. Poteet had to work together to place Warren's arms behind her back to handcuff her.

{¶ 10} Ofc. Newsome testified that he had placed Warren in handcuffs to detain her so that he could identify her and determine why she was driving recklessly. He

indicated that he had decided to use handcuffs because he had safety concerns given that Warren ignored his order to stop walking, would not listen to him, and would not provide him with her driver's license.

{¶ 11} After the officers handcuffed Warren, the video showed the officers escorting Warren to their police cruiser while she continued yelling at them. As they approached the police cruiser, Ofc. Poteet said: "Okay, you're either getting a ticket or going to jail, how about that?" In response, Warren said: "I'm not doing neither." Ofc. Poteet then said: "You got to cooperate with us." Warren responded: "No. Then let me go. Then let me go." Ofc. Poteet once again tried to reason with Warren and said: "You got to cooperate with us or you're going to jail." Warren thereafter refused to get inside the police cruiser and said: "I'm not doing that. No. Y'all not putting me in the back of that car."

{¶ 12} In addition to verbally protesting against the officers putting her in the police cruiser, Warren could be seen placing her right leg against the doorframe of the cruiser and going deadweight to prevent the officers from getting her in the backseat. The video also showed Ofc. Poteet go to the other side of the cruiser so that he could grab Warren's arms and pull her body across the backseat as Ofc. Newsome guided her legs into the cruiser. Once the officers got Warren inside the cruiser, she called them "stupid mother fuckers." In response, Ofc. Newsome told Warren: "Well, now you are going to jail." However, at trial, Ofc. Newsome explained that he was only threatening Warren with jail at that point in time.

{¶ 13} The video next showed Ofc. Newsome briefly searching the vehicle Warren

had been driving. Ofc. Newsome then returned to the police cruiser, introduced himself to Warren, and explained that he had stopped her due to her reckless driving. During that time, Warren was yelling and talking over Ofc. Newsome. She eventually told Ofc. Newsome that she had a valid driver's license and that the vehicle she had been driving belonged to her friend. However, while Ofc. Newsome was speaking with Warren, Ofc. Poteet researched Warren's driving status and determined that Warren did not have a valid driver's license.

{¶ 14} After learning that Warren did not have a valid driver's license, Ofc. Newsome briefly searched the vehicle again and told Warren that the vehicle was going to be towed. Warren, who was very upset, begged Ofc. Newsome not to tow the vehicle and asked if she could call the owner of the vehicle to pick it up. Ofc. Newsome declined Warren's request and again told her that the vehicle was going to be towed. He also told Warren that she would receive a citation, and Ofc. Poteet told her that they were choosing not to take her to jail. Despite this, Warren relentlessly protested and accused the officers of wrongdoing. At one point, Warren called Ofc. Newsome a "fucking dickhead" and accused him of unfairly "using [his] power against [her]" and "violating [her]."

{¶ 15} When the tow truck arrived at the scene, Ofc. Newsome realized that he did not have the keys to the vehicle that Warren had been driving. Ofc. Newsome asked Warren if she had the keys to the vehicle, and Warren responded: "No. I can call the girl that got the keys. She can come and pick it up." Ofc. Newsome, however, declined Warren's offer and eventually ordered her to step out of the police cruiser so that he could search her for the keys. Warren, however, refused to step out of the police cruiser. After

ignoring multiple orders to exit the police cruiser, and after constantly arguing with the officers, Ofc. Newsome told Warren that she was going to jail for "obstructing and resisting." A few moments later, Warren threw the keys to the vehicle on the ground. At trial, Ofc. Newsome clarified that it was not until Warren refused to step out of the vehicle and provide him with the keys that he decided to place her under arrest.

{¶ 16} After Ofc. Newsome informed Warren that she was going to jail for obstructing and resisting, the video showed Ofc. Newsome getting Warren out of the police cruiser in order to conduct a pat down search on her. As Ofc. Newsome asked Warren to step out of the cruiser, Warren kicked her left leg at the officer. In response, Ofc. Newsome said: "Do not kick me." Warren then denied kicking the officer and continued yelling and protesting as Ofc. Newsome conducted the pat-down search.

{¶ 17} Once the pat-down search was complete, Ofc. Newsome ordered Warren to "have a seat." Instead of complying, Warren stood her ground and physically resisted getting back inside the police cruiser. Due to Warren's resistance, Ofc. Newsome had to guide Warren into the cruiser on her back. Thereafter, Warren said: "I'm going to fucking kick you now bitch" and continued shouting other profanities at Ofc. Newsome. Warren also continued yelling and shouting profanities at the officers while they were driving her to jail.

{¶ 18} After presenting Ofc. Newsome's testimony and the body camera video, the State rested its case. Warren's trial counsel then moved for a Crim.R. 29 acquittal of the charges, which the trial court overruled. Warren thereafter rested her case without presenting any further evidence. The trial court took the matter under advisement and

issued a decision on June 6, 2024, finding Warren guilty of both obstructing official business and resisting arrest. Prior to that, Warren had pled guilty to reckless operation and driving without a valid license in the associated traffic case. As part of her plea agreement in the traffic case, Warren agreed to stipulate that she had been the driver of the vehicle for purposes of her criminal trial.

{¶ 19} At sentencing, the trial court imposed a $50 fine and two 90-day jail terms for Warren's obstructing official business and resisting arrest offenses. However, the trial court granted Warren one day of jail-time credit and suspended the remaining 89 days of each jail term. In addition, the trial court sentenced Warren to non-reporting community control for one year on the condition that she commit no new offenses and comply with her probation in Montgomery C.P. No. 2023 CR 1558.

{¶ 20} Warren now appeals from her convictions for obstructing official business and resisting arrest. In support of her appeal, Warren has raised two assignments of error for review. Because her assignments of error are interrelated, we will address them together.

**First and Second Assignments of Error**

{¶ 21} Under her first and second assignments of error, Warren contends that her convictions for obstructing official business and resisting arrest were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons outlined below, we disagree.

*Standards of Review*

**{¶ 22}** "When a defendant challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2018-Ohio-2424, ¶ 7 (2d Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471 (2d Dist. 2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997), citing *Jenks* at 503.

**{¶ 23}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.), citing *State v. Hufnagle*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*Obstructing Official Business*

{¶ 24} As previously discussed, Warren is challenging the sufficiency and manifest weight of the evidence underlying her conviction for obstructing official business in violation of R.C. 2921.31(A). That statute provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). " 'R.C. 2921.31(A) thus includes five essential elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege.' " *State v. Body*, 2018-Ohio-3395, ¶ 20 (2d Dist.), quoting *State v. Kates*, 2006-Ohio-6779, ¶ 21 (10th Dist.).

{¶ 25} " 'Privilege' in the context of R.C. 2921.31 refers to a positive grant of authority entitling one to deliberately obstruct or interfere with a police officer performing his lawful duty." *State v. Stayton*, 126 Ohio App.3d 158, 163 (1st Dist. 1998); *accord Body* at ¶ 29. A person acts "with purpose" within the meaning of R.C. 2921.31 "when it is the

person's specific intention to cause a certain result[.]" R.C. 2901.22(A). "The law has long recognized that intent is not discernible through objective proof." *State v. Puterbaugh*, 142 Ohio App.3d 185, 189 (4th Dist.), citing *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus; *accord State v. McCoy*, 2008-Ohio-5648, ¶ 14 (2d Dist.). "Rather, a defendant's intent in acting must be 'determined from the manner in which it [the act] is done, the means used, and all other facts and circumstances in evidence.' " *McCoy* at ¶ 14, quoting *State v. Wellman*, 2007-Ohio-2953, ¶ 15 (1st Dist.).

{¶ 26} "To be guilty of the offense of obstructing official business, an individual must commit an overt act done with an intent to obstruct a public official, such as a police officer, and the act must succeed in actually hampering or impeding that officer." *State v. Gibson*, 2019-Ohio-1022, ¶ 18 (2d Dist.), citing *State v. Davis*, 2017-Ohio-5613, ¶ 37 (2d Dist.). Therefore, " ' "[t]he proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." ' " *Id.*, quoting *State v. Henry*, 2018-Ohio-1128, ¶ 55 (10th Dist.), quoting *Wellman* at ¶ 12. " ' "Where the overall pattern of behavior is one of resistance, . . . officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction.' " *Body* at ¶ 22, quoting *Roseborough v. City of Trotwood*, 2007 WL 3402880, *5 (S.D. Ohio Nov. 13, 2007), quoting *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005). In other words, "[t]he totality of the defendant's conduct should be considered, as opposed to viewing each act in isolation." *State v. Easterling*, 2019-Ohio-2470, ¶ 35 (2d Dist.), citing *Body* at ¶ 22.

{¶ 27} " 'Generally, an individual can be found guilty of obstructing official business

when he persists in performing a specific act [after] a police officer has told him to stop.' " *Gibson* at ¶ 19, quoting *City of Girard v. Oakman*, 2018-Ohio-1212, ¶ 52 (11th Dist.). However, in doing so, the defendant must have "actually hampered or impeded the police in performing their lawful duties." *State v. Gillam*, 2019-Ohio-808, ¶ 19 (2d Dist.), citing *McCoy* at ¶ 16. The hamper/impede element " 'does not require that [the defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] disrupted their performance of them.' " *State v. Terry*, 2016-Ohio-3484, ¶ 22 (2d Dist.), quoting *McCoy* at ¶ 16. We have explained that "[b]efore it can be concluded that an officer was hampered or impeded, 'there must be some "substantial stoppage" of the officers' progress.' " *Gillam* at ¶ 19, quoting *Wellman* at ¶ 17. There is, however, "no 'finite period of time [that] constitutes a "substantial stoppage," . . . If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction.' " *Id.*, quoting *Wellman* at ¶ 18.

{¶ 28} In this case, the evidence established that Warren engaged in multiple overt acts that hampered or impeded the officers' ability to complete the traffic stop for Warren's speeding and red-light violations. First, Warren continued walking away from Ofc. Newsome at the gas station after he ordered her to stop. Warren also denied that she was driving and failed to cooperate when Ofc. Newsome requested her to either provide her driver's license or go with the officers to their police cruiser. Specifically, Warren responded: "No. I'm not going no fucking where." State's Ex. 1 at 0:23 to 0:25. Then, when the officers tried to detain her in handcuffs so that they could investigate her identity and complete the traffic stop, Warren physically resisted by pulling her arms away. *Id.* at

0:24 to 0:50. Ofc. Newsome testified that this conduct impeded his ability to detain Warren and added extra time to the detention. Trial Tr., p. 18.

{¶ 29} The video evidence also established that, while detained, Warren refused to get in the backseat of the officers' police cruiser. Warren told the officers: "Y'all not putting me in the back of that car." State's Exhibit 1 at 1:12 to 1:14. Then, despite Ofc. Newsome ordering Warren multiple times to "have a seat," Warren physically resisted by placing her right leg against the doorframe of the cruiser and by going deadweight. *Id.* at 1:20-2:05. Ofc. Newsome testified that Warren's actions of going deadweight and using her leg on the doorframe hampered or impeded his ability to detain her so that he could proceed with determining her identity for purposes of the traffic stop. Trial Tr., p. 20. Ofc. Newsome also testified that, to his knowledge, Warren did not have a legal privilege to resist being handcuffed or placed in the police cruiser. *Id.* Warren did not present any evidence of such a privilege either.

{¶ 30} The video evidence further established that Warren failed to cooperate with Ofc. Newsome when he asked her for the keys to the vehicle she was driving. Ofc. Newsome, however, testified that the keys were not needed to tow the vehicle and that Warren's initial refusal to provide the keys did not hamper or impede the tow. *Id.* at 55-56. Regardless, it is clear from the record that Warren's overall pattern of behavior was one of resistance and that her other actions did in fact hamper or impede the officers' ability to complete the traffic stop. Also, the manner of Warren's conduct as shown on the video sufficiently established that Warren had the requisite intent to hamper or impede the officers in the performance of their duties.

{¶ 31} For the foregoing reasons, we find that the evidence presented at trial satisfied all elements of obstructing official business. That is, when the evidence is viewed in a light most favorable to the State, a rational trier of fact could have concluded beyond a reasonable doubt that Warren engaged in various overt acts that hampered or impeded the officers in the performance of their lawful duties, and that Warren did so with the requisite intent and without any privilege. Therefore, Warren's claim that her conviction for obstructing official business was not supported by sufficient evidence lacks merit.

{¶ 32} Also lacking in merit is Warren's claim that her obstructing official business conviction was against the manifest weight of the evidence. After reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the trial court lost its way and created a manifest miscarriage of justice by finding Warren guilty of obstructing official business. The weight of the evidence, particularly the body camera video, supported the trial court's guilty verdict on that charge. Accordingly, this case is not one that presents the kind of exceptional circumstance that warrants reversing a conviction on manifest weight grounds.

*Resisting Arrest*

{¶ 33} Warren also challenges the sufficiency and manifest weight of the evidence underlying her conviction for resisting arrest in violation of R.C. 2921.33(A). That statute provides: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." R.C. 2921.33(A).

{¶ 34} "A person acts recklessly when, with heedless indifference to the

consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). The term " 'force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The phrase "resist or interfere" is not defined by statute, but "the Legislative Service Commission Comment accompanying the statute reads: '. . . The offense may be committed through the use of force, or recklessly by any means, such as 'going limp.' ' " (Emphasis deleted.) *State v. Hawkins-McKinney*, 2011-Ohio-4667, ¶ 16 (2d Dist.). In addition, the Ohio Jury Instructions define "resist or interfere" as "to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law-enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct." *Ohio Jury Instructions*, CR § 521.33(4) (Rev. May 22, 2021).

{¶ 35} " 'An arrest is "lawful" if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed.' " (Citations omitted.) *State v. Blair*, 2012-Ohio-1847, ¶ 8 (2d Dist.), quoting *State v. Sansalone*, 71 Ohio App.3d 284, 285-286 (1st Dist. 1991). Thus, "the State must prove both 'that there was a reasonable basis to believe that an offense was committed, [and] that the offense was one for which the defendant could be lawfully arrested.' " *State v. Burns*, 2010-Ohio-2831, ¶ 29 (2d Dist.), quoting *State v. Vactor*, 2003-Ohio-7195, ¶ 34 (3d Dist.).

{¶ 36} Based on the video evidence, and for reasons previously discussed, we find that the surrounding circumstances in this case gave Ofc. Newsome probable cause to

believe that Warren had committed the offense of obstructing official business. Because obstructing official business is an arrestable offense, the evidence established that Warren was subject to a lawful arrest.

{¶ 37} The video evidence also established that Warren recklessly or by force interfered with her lawful arrest. Specifically, Warren kicked her leg at Ofc. Newsome as he was taking her out of the police cruiser to conduct a pat-down search. State's Exhibit 1 at 33:10 to 33:15. Warren also physically resisted when Ofc. Newsome ordered her to get back inside the cruiser after the pat-down search was completed. Instead of complying with Ofc. Newsome's order to "have a seat," Warren stood her ground and physically resisted as the officer attempted to get her back inside the police cruiser. *Id.* at 33:30 to 33:44. Due to Warren's resistance, Ofc. Newsome had to guide Warren into the cruiser on her back. *Id.* During her ride to jail, Warren also told the officers that she was not going to cooperate with them and that she felt like fighting. *Id.* at 42:00 to 42:08.

{¶ 38} Although Warren's interference with her arrest occurred after Ofc. Newsome had already handcuffed her, this court has held that arrestees can be convicted of resisting arrest for events that occur after police officers have already exerted physical control over them. *See State v. Turic*, 2011-Ohio-6713, ¶ 5,12-19 (2d Dist.) (arrestee in handcuffs resisted arrest by jerking around and violently pushing back at an officer who was conducting a pat-down search on her); *State v. Cole,* 2010-Ohio-1608, ¶ 35-41 (2d Dist.) (arrestee in handcuffs resisted arrest by refusing to walk and by kicking, grabbing, and pushing officers while they were trying to book him into jail). *See also State v. Bay,* 130 Ohio App.3d 772, 775 (1st Dist. 1998). This is because " '[a] formal arrest . . . is "not

necessarily an instantaneous event," . . . but rather is a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime.' " *Cole* at ¶ 39, quoting *Bay* at 775, quoting *State v. Bolden*, 104 Ore.App.356, 359 (1990). For example, in *Turic*, we held that even though the appellant had been placed under arrest and handcuffed, her subsequent physical resistance to a pat-down search constituted sufficient evidence of resisting arrest. *Id.* at ¶ 19. In so holding, we explained that "[o]ther steps 'necessary to effect the formal charging of a crime' are encompassed within the process of an arrest for purposes of resisting arrest." *Id.* at ¶ 19 quoting *Cole* at ¶ 39.

{¶ 39} Based on the foregoing principles, we conclude that Warren's conduct of kicking her leg at Ofc. Newsome and physically resisting when Ofc. Newsome tried to get her back inside the police cruiser after the pat-down search constituted evidence of her interfering with her lawful arrest for obstructing official business. Therefore, we find that when all the evidence is viewed in a light most favorable to the State, a rational fact finder could have concluded beyond a reasonable doubt that Warren did recklessly or by force interfere with her lawful arrest, thus satisfying all elements of resisting arrest. Accordingly, Warren's conviction for resisting arrest was supported by sufficient evidence.

{¶ 40} Furthermore, after reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the trial court lost its way and created a manifest miscarriage of justice by finding Warren guilty of resisting arrest. Again, the weight of the evidence, particularly the body camera video, supported the trial court's guilty verdict on that charge. Accordingly, Warren's

conviction for resisting arrest was not against the manifest weight of the evidence.

{¶ 41} Warren's first and second assignments of error are overruled.

## Conclusion

{¶ 42} Having overruled both of Warren's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.