The STATE of Ohio, Appellee,

v.

BOWMAN et al., Appellants.

[Cite as *State v. Bowman* (2001), 144 Ohio App.3d 179.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA2000–06–104 and CA2000–06–105.

Decided June 11, 2001.

*Robin N. Piper*, Butler County Prosecuting Attorney, *Daniel G. Eichel* and *Karl R. Harris*, Assistant Prosecuting Attorneys, for appellee.

*Clayton G. Napier*, for appellants Timothy J. Bowman, Sr. and Kathi R. Bowman.

POWELL, Judge.

In this consolidated appeal, defendants-appellants Kathi Bowman and Timothy Bowman appeal their convictions in the Butler County Area I Court. For the reasons that follow, we affirm.

On the evening of November 6, 1999, Deputies Sprague, Addis, and Kash from the Butler County Sheriff's Office arrived at appellants' home. They came to arrest appellants' adult son, Dustin Bowman, on a domestic violence complaint filed by his wife, Elizabeth. Dustin[1] and appellants were outside when the deputies arrived. When Deputy Kash reached for Dustin to place him under arrest, Dustin resisted. Dustin wrapped his arms around the deputy's waist and rammed his head into the deputy's groin. Deputy Addis attempted to assist Deputy Kash and subdue Dustin by tackling them to the ground. Appellants began moving toward the struggle between the deputies and their son, but Deputy Sprague stopped them by grabbing Kathi's arm and Timothy's coat. Deputy Sprague sensed that Timothy was no longer attempting to get involved, so he released his hold on Timothy's coat. However, Timothy immediately became involved in the struggle and, according to the deputies, tried to pull his son away from them. Deputy Sprague let go of Kathi's arm to assist Deputies Addis and Kash. Kathi followed Deputy Sprague and joined the fray.

Appellants were each charged with one count of obstructing official business and one count of resisting arrest. At trial, appellants denied interfering with the arrest of their son. Appellants maintained that they had called the sheriff's office in an attempt to get a restraining order against Elizabeth. They were shocked when the deputies arrived at their home and proceeded to arrest Dustin. According to Kathi, Deputy Addis knocked her to the ground when he tackled Deputy Kash and Dustin. She denied trying to pull Dustin from the deputies. Kathi also contended that Deputy Addis struck her in the face with a flashlight during the course of the arrest. Timothy testified that he never touched his son during the arrest and merely pleaded with the deputies to tell him why they were

---

1. Since many of the individuals involved in this case share the same surname, some will be referred to by their first name for clarity. However, the term "appellants" will be used to refer to Timothy and Kathi Bowman collectively.

there. A friend of the family who witnessed the arrest supported appellants' version of the events.

The jury found Timothy not guilty of resisting arrest but guilty of obstructing official business. The jury found Kathi guilty of both charges. Appellants appeal their convictions and raise three assignments of error for review.

Assignment of Error No. 1:

"The evidence of an alleged gun incident involving Dustin Bowman, purported to have taken place one week prior, was irrelevant, prejudicial and highly inflammatory and denied appellants a fair trial."

In their first assignment of error, appellants contend that the trial court unfairly prejudiced them by allowing the prosecution to present inadmissible evidence. Appellants argue that the trial court permitted Elizabeth Bowman to testify to "a whole array of domestic [violence] charges against Dustin Bowman." Appellants maintain that Elizabeth Bowman's testimony about an alleged incident of domestic violence committed by Dustin unfairly "assassinated" the character of the entire family with irrelevant evidence.

The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, all relevant evidence is admissible. Evid.R. 402. However, relevant evidence is not admissible where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A); *State v. Jurek* (1989), 52 Ohio App.3d 30, 35, 556 N.E.2d 1191, 1196–1197. Absent an abuse of discretion and a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of relevant evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 336, 483 N.E.2d 1157, 1164, certiorari denied (1986), 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Rivera* (1994), 99 Ohio App.3d 325, 328, 650 N.E.2d 906, 907–908.

Appellants were each charged with one count of obstructing official business in violation of R.C. 2921.31(A), which provides:

"No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public

official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

Appellants were also each charged with resisting arrest in violation of R.C. 2921.33, which states: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

A review of the record demonstrates that Elizabeth, contrary to appellants' assertion, did not testify to "a whole array of domestic charges against Dustin." Rather, Elizabeth testified only about a single incident of domestic violence that she reported to the Butler County Sheriff's Office on November 6, 1999. Elizabeth's testimony is relevant because her report of domestic violence provided the basis for the deputies to enter upon appellants' property and arrest Dustin. To be culpable for obstructing official business, an individual must do an act that hampers or impedes a public official in the performance of the public official's lawful duties. See R.C. 2921.31(A). Similarly, culpability for resisting arrest requires interfering or resisting a lawful arrest. See R.C. 2921.33. Elizabeth's testimony tends to establish that the deputies were carrying out an authorized act within their official capacity and were present at appellants' property to effectuate a lawful arrest.

The probative value of Elizabeth's testimony is indisputable. The question then becomes whether there was unfair prejudice to appellants by allowing Elizabeth to describe the details of the alleged incident of domestic violence whereby Dustin held her and their child at gunpoint for more than three hours. Unfavorable evidence is not equivalent to unfairly prejudicial evidence. See *State v. Geasley* (1993), 85 Ohio App.3d 360, 373, 619 N.E.2d 1086, 1094. Unfairly prejudicial evidence is that which might result in an improper basis for a jury decision. *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, 893; *State v. Broadnax* (Feb. 16, 2001), Montgomery App. No. 18169, unreported, 2001 WL 127779. Consequently, evidence that arouses the jury's emotions, evokes a sense of horror, or appeals to an instinct to punish may be unfairly prejudicial. *Oberlin*, 91 Ohio St.3d at 172, 743 N.E.2d at 893, citing Weissenberger's Ohio Evidence (2000) 85–87, Section 403.3. Thus, the decision to exclude evidence under Evid.R. 403(A) involves more than a determination of whether the evidence is merely prejudicial or unfavorable. *Id.* The evidence must cause *unfair* prejudice, for if the term "unfair prejudice" simply meant prejudicial or unfavorable, anything adverse to a litigant's case would be excluded under Evid.R. 403. *Id.*

Elizabeth's testimony about the alleged incident of domestic violence was marginally unfavorable and prejudicial to appellants. However, we cannot conclude that the testimony caused unfair prejudice to appellants. Elizabeth's testimony concerned only the alleged actions of Dustin that led the deputies to

arrest him. The testimony cannot be said to arouse the jury's emotions, evoke a sense of horror, or appeal to their instinct to punish appellants for the alleged actions of their son. Further, the jury's decision finding Timothy not guilty of resisting arrest belies appellants' claim of unfair prejudice by association with Dustin. Therefore, we conclude that the probative value of Elizabeth's testimony was not outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion in admitting Elizabeth's testimony. Accordingly, appellants' first assignment of error is overruled.

Assignment of Error No. 2:

"The court permitted the prosecutor to use improper rebuttal testimony as impeachment, without laying a foundation, and without first establishing an inconsistent statement."

In their second assignment of error, appellants argue that the trial court improperly admitted the rebuttal testimony of Kathi Kaller, an emergency medical technician who treated appellants after the arrest of their son. Appellants contend that the state failed to lay the proper foundation for Kaller's testimony as required for the admission of a prior inconsistent statement under Evid.R. 613(B). Appellants also maintain that the rebuttal testimony was improper because it concerned whether Deputy Addis hit Kathi in the face with his flashlight, which was an inconsequential fact in the case.

Rebuttal evidence is that which is given to explain, refute, counteract, or disprove facts given in evidence by the adverse party. *State v. McNeill* (1998), 83 Ohio St.3d 438, 446, 700 N.E.2d 596, 605–606; *Nickey v. Brown* (1982), 7 Ohio App.3d 32, 35, 7 OBR 34, 37–38, 454 N.E.2d 177, 181–182. Rebuttal evidence becomes relevant only to challenge the evidence offered by the adverse party, and such evidence limits its scope. *Id.* The admission or exclusion of rebuttal testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. See, *e.g.*, *McNeill*, 83 Ohio St.3d at 446, 700 N.E.2d at 605–606.

Evid.R. 613 governs the procedures for impeachment of a witness by self-contradiction.[2] There are two types of self-contradiction impeachment recognized

---

**2.** Evid.R. 613 provides:

"(B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

"(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

"(2) The subject matter of the statement is one of the following:

by Evid.R. 613: prior inconsistent statements and prior inconsistent conduct. Extrinsic evidence of a prior inconsistent statement or prior inconsistent conduct is generally admissible if two conditions are met. See Evid.R. 613(B). First, if the evidence is offered for the sole purpose of impeaching the witness, the proponent must lay the proper foundation and the witness must have the opportunity to explain or deny the inconsistent behavior or conduct.[3] Evid.R. 613(B)(1); *State v. Hartman* (Apr. 5, 1999), Clermont App. No. CA98–06–040, unreported, 1999 WL 188145.

Second, the subject matter of the extrinsic evidence must be a fact of consequence to the determination of the action other than the credibility of the witness, a fact that may be shown under other Rules of Evidence, or a fact that may be shown by extrinsic evidence under the common law of impeachment. Evid.R. 613(B)(2). Included in the foregoing is evidence that is critical to the determination of the credibility of a witness's story. Staff Note to 1998 Amendment to Evid.R. 616. This type of evidence, referred to as "linchpin" evidence, is evidence of a " 'contradiction of any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story was true.' " *Id.*, quoting McCormick, Evidence (3 Ed.1984), Section 47, at 112.

At trial, Kathi testified that Deputy Addis struck her in the face with a flashlight and ordered her to get into the house. She stated that she sustained an injury from the flashlight and a life squad responded to the scene to treat her. Kathi remembered that her neighbor, Kaller, was the responding EMT. On cross-examination, the prosecutor asked Kathi whether she indicated to Kaller

---

"(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

"(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(B) or 706;

"(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

"(C) Prior inconsistent conduct. During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach. If offered for the sole purpose of impeaching the witness's testimony, extrinsic evidence of that prior inconsistent conduct is admissible under the same circumstances as provided for prior inconsistent statements in Evid.R. 613(B)(2)."

3. Evid.R. 613(C) does not specifically require a proponent to disclose prior inconsistent conduct to a witness and the witness to be afforded an opportunity to explain or deny the apparent inconsistency prior to the introduction of extrinsic evidence. However, an Ohio Supreme Court case predating Evid.R. 613 appears to suggest that the same foundational requirements should be used for both prior inconsistent statements and prior inconsistent conduct. See *Westinghouse Elec. Corp. v. Dolly Madison Corp.* (1975), 42 Ohio St.2d 122, 132, 71 O.O.2d 85, 91, 326 N.E.2d 651, 658; see, also, Staff Note to 1998 Amendment to Evid.R. 613.

the cause of her injury. Kathi responded that she told her that Deputy Addis hit her in the eye with his flashlight.

Kaller testified, over appellants' objection, that she responded to an emergency call at appellants' home. Kaller indicated that she observed swelling underneath Kathi's eye. Kaller testified that Kathi never told her that she was hit by a flashlight, nor did Kathi blame Deputy Addis for causing the injury.

Kathi's testimony that she told Kaller about Deputy Addis injuring her by striking her in the face with a flashlight is inconsistent with her subsequent conduct when she failed to make the report to Kaller. Kathi's conduct during the course of treatment is inconsistent with the facts she asserted on the witness stand and, as such, was a proper subject for impeachment under Evid.R. 613(C). Appellants incorrectly contend that whether Deputy Addis struck Kathi is not a fact of consequence to the action. Appellants' theory of defense and their testimony relied on the premise that they were merely bystanders and victims of harassment from the deputies. According to Kathi, she did not interfere with the arrest of her son but, instead, she was tackled to the ground, struck in the face with a flashlight, and ordered to go inside her house. The contradiction between Kathi's conduct with Kaller and her account of the events is a contradiction, "which as a matter of human experience [she] would not be mistaken about if [her] story was true." Since Kathi reaffirmed on cross-examination that she reported to Kaller that Deputy Addis struck and injured her with a flashlight, she was afforded a sufficient opportunity to explain or deny the prior inconsistent behavior. See State v. Walker (1995), 101 Ohio App.3d 433, 435–436, 655 N.E.2d 823, 824.

Since the evidence of Kathi's prior inconsistent conduct was proper impeachment under Evid.R. 613, the trial court did not abuse its discretion in admitting the rebuttal evidence. Accordingly, appellant's second assignment of error is overruled.

Assignment of Error No. 3:

"The trial court erred in failing to appropriately instruct the jury concerning all alleged defenses."

In their third assignment of error, appellants allege that the trial court incorrectly instructed the jury regarding the elements of the offenses with which they were charged. The contested jury instructions are as follows:

"The defendant * * * is charged with resisting arrest. Before you can find the defendant guilty you must find beyond a reasonable doubt that on or about the 6th day of November 1999 in Morgan Twp Butler County Ohio that the defendant recklessly or by force interfered with the lawful arrest of another by pulling on Dustin Bowman while Deputy Kash was arresting Dustin Bowman.

"* * *

"The defendant * * * is charged with obstructing official business. Before you can find the defendant guilty you must find beyond a reasonable doubt that on or about the 6th day of November 1999 in Butler County, Morgan Twp., Ohio the defendant without privilege to do so and with the purpose to prevent or obstruct or delay the performance of a public official of an authorized act within his official capacity hampered or impeded Deputy Kash in the performance of his lawful duties or arresting Dustin Bowman *by pulling on Dustin Bowman.* " (Emphasis added.)

Appellants contend that the trial court, through its instructions to the jury, impermissibly made a factual finding. Appellants argue that the instructions allowed the jury to infer that the trial court decided that appellants had actually pulled on Dustin, even though there was evidence in the record to the contrary.

Generally, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged. *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 170, 404 N.E.2d 144, 145–146. However, Crim.R. 30(A) states: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating *specifically* the matter objected to and the grounds of the objection." (Emphasis added.) A failure to object to a jury instruction before the jury retires in accordance with Crim.R. 30(A) constitutes a waiver, absent plain error. *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279, 1282–1283.

The record is devoid of a specific objection to the above instructions. The record contains only one specific objection to the jury instructions. Appellants objected to the trial court's failure to instruct the jury on the definition of "beyond a reasonable doubt," which the trial court corrected. However, appellants complain in their brief that "huge portions of the record were omitted," suggesting perhaps that a specific objection to the instructions may have been made but not transcribed. Pursuant to App.R. 9(B), appellants have the burden of filing with the appellate court the appropriate portions of the record necessary for the determination of an appeal. If no transcript or report of the proceedings is available, or if there are missing portions of the transcript, appellants can meet their burden by other suitable alternatives for proper compliance with the Appellate Rules. See App.R. 9. Where the record is incomplete, an appellate court will indulge in all reasonable presumptions consistent with the record in favor of the validity of the judgment under review and the legality of the proceedings below. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219–220, 400 N.E.2d 384, 385–386. Since there is no

record of any other specific objection to the jury instructions, appellants have waived all but plain error with respect to the instructions in question.

Pursuant to Crim.R. 52(B), "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A plain error within the meaning of Crim.R. 52(B) is an obvious error that is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings. *State v. Craft* (1977), 52 Ohio App.2d 1, 7, 6 O.O.3d 1, 4–5, 367 N.E.2d 1221, 1225–1226. Under plain error analysis it must be clear from the record that an error was committed and, except for the error, the result of the trial clearly would have been otherwise. *State v. Bock* (1984), 16 Ohio App.3d 146, 150, 16 OBR 154, 158, 474 N.E.2d 1228, 1233. The plain error rule must be applied with the utmost caution and invoked only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 4 OBR 580, 448 N.E.2d 452.

We conclude that the trial court's instructions to the jury do not constitute plain error. Although the trial court should not have added the phrase "by pulling on Dustin Bowman," the resulting instructions did not result in a manifest miscarriage of justice. The result of the trial court's instructions was to limit the jury to finding appellants guilty only if they found that appellants "by pulling on Dustin Bowman" obstructed official business or interfered with his lawful arrest. The record is replete with evidence of many other acts by which the jury could have concluded that appellants obstructed official business or resisted arrest. Yet the instructions given to the jury required them to first find that either appellant pulled on Dustin and then limited them to deciding whether that pulling met the requirements for a conviction for obstructing official business or resisting arrest. Accordingly, appellants' third assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.